UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

RICKY FLAMINGO BROWN,                )
                                     )
         Plaintiff,                  )
                                     )
v.                                   )   No.:   3:25-CV-370-TAV-DCP
                                     )
TANNER REHEAL, et al.,               )
                                     )
         Defendants.                 )

# MEMORANDUM OPINION AND ORDER

Plaintiff Ricky Flamingo Brown, a prisoner in the custody of the Tennessee Department of Correction ("TDOC"), filed a motion for leave to file an amended complaint under 42 U.S.C. § 1983 [Doc. 25, pp. 1, 17], affidavits and an exhibit in support [*Id*. at 2–5, 17–20], and an amended complaint [*Id*. at 6–16]. Plaintiff has also filed various records, exhibits, and a copy of his initial complaint [*See, e.g.*, Docs. 13, 15, 16, 17, 20, 21, 22, 23, 24, 26, 27]. Plaintiff has paid the filing fee.

## I.      BACKGROUND AND PRELIMINARY MATTERS

On August 5, 2025, this Court entered a Memorandum Opinion and Order denying Plaintiff's motion for leave to proceed *in forma pauperis* in this § 1983 action due to Plaintiff's abuse of the privilege under the "three strikes" provision of the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(g) [*See* Doc. 5]. The Court dismissed this action without prejudice to Plaintiff's ability to pay the filing fee and reinstate the case [*See* Doc. 6].

Plaintiff subsequently filed a motion to amend his complaint [Doc. 7] and a motion to reinstate his case [Doc. 9] and paid the filing fee. Before the Court ruled on his motions, he also filed a motion to withdraw a particular Defendant from his proposed amended complaint [Doc. 11] and various documents intended to serve as evidence in this case [Docs. 13–17]. Thereafter, the Court entered an Order granting Plaintiff's motion to reinstate his case and directing the Clerk to reopen this case and place it on the active docket [Doc. 18]. The Court also denied Plaintiff's motion to amend without prejudice and permitted Plaintiff through November 14, 2025, to move to file an amended complaint containing "**all** Plaintiff's claims, facts, and Defendants in one document" [*Id.* at 1–2]. Thereafter, Plaintiff submitted dozens of pages of additional "evidence" [Docs. 20–24, 26] and a motion for leave to file an amended complaint [Doc. 25]. Plaintiff also filed a copy of his initial complaint [Doc. 27].

In light of these events, the Court advises Plaintiff evidence should be filed in this case only when it is used to support or oppose a motion for relief. Accordingly, Plaintiff is **ORDERED** to refrain from submitting any further records or exhibits until he is ready to use them in this case (i.e., to support or oppose a motion for summary judgment).

## II. MOTIONS TO AMEND

Because the Court previously entered an Order permitting Plaintiff an opportunity to amend [Doc. 18], Plaintiff's latest motion to amend his complaint [Doc. 25] is well taken and **GRANTED**. Pursuant to the amended complaint [*Id.*], the Clerk is **DIRECTED** to add Corporal ("Cpl.") Scott, Dillion Brown, Jason Phillips, Mr. Weitz, Sergeant ("Sgt.") Blair, and Sgt. McClure to the docket as Defendants [*Id.* at 1].

2

Because "[a]n amended complaint supersedes an earlier complaint for all purposes[,]" *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013), Plaintiff's prior complaints have no legal effect, and his motion to withdraw "Defendant Ms. Yearian" from a prior complaint [Doc. 11] is **DENIED** as moot.

## III. SCREENING OF AMENDED COMPLAINT

### A. Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted[,]" or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, allegations that give rise to a mere possibility

3

that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

B. **Plaintiff's Relevant Allegations**

Plaintiff is a prisoner at the Northeast Correctional Complex ("NECX") [Doc. 25, p. 7]. On July 2, 2025, a shipment of drugs was intercepted in the truck bringing food to the NECX's kitchen [*Id.* at 2]. On July 16, 2025, TDOC Commissioner Strada issued an order for strike-force team members to lock down the facility and search for contraband [*Id.*]. Approximately 50 officers from different institutions—including Corrections Officer ("CO") Brandon Skiles, CO Dillion Brown, Cpl. Scott, and Sgt. Tanner Reheal, officers from the Bledsoe County Correctional Complex ("BCCX") tactical team—assisted in the search [*Id.* at 2, 8–9].

During the search, Sgt. Reheal entered Plaintiff's cell at a time when Plaintiff was wearing only his underwear and a t-shirt [*Id.* at 12]. Sgt. Reheal told Plaintiff to strip off his clothes and hand them over [*Id.* at 2, 12]. Plaintiff complied, but when he handed his underwear to Sgt. Reheal, Sgt. Reheal dropped them on purpose and told Plaintiff to pick them up [*Id.* at 2]. Plaintiff complied, and Sgt. Reheal told Plaintiff to lift his penis and "[o]pen up [his] behind . . . so that he could see up in [Plaintiff's] rectum" [*Id.* at 2–3, 12]. Plaintiff complied, and then Sgt. Reheal told Plaintiff to put his fingers in his mouth and spread his mouth open [*Id.* at 3, 12]. At that point, Plaintiff stated, "This is that racial stuff" and asked to speak to Cpl. Scott, Sgt. Reheal's supervisor [*Id.* at 3, 12]. Pursuant to TDOC

4

policy, a CO is required to call their supervisor to resolve an issue upon an inmate's request that the supervisor be called [*Id*. at 2]. Plaintiff repeatedly asked the BCCX officers to get their supervisor, but it fell on "deaf ear[s]" [*Id.*]. Instead, Sgt. Reheal told Plaintiff to turn around, and he placed handcuffs on Plaintiff [*Id.* at 3].

After Plaintiff was handcuffed, Sgt. Reheal told Plaintiff to remove his ring, which was a wedding band that had belonged to Plaintiff's late mother [*Id.* at 2, 3, 12]. The band, a family heirloom, had been on Plaintiff's finger for over 30 years [*Id.* at 2]. Plaintiff advised Sgt. Reheal of this fact, and he told Officers Skiles, Brown, and Scott that the ring could only be removed by a doctor [*Id.*].[1]

Plaintiff again asked to speak with Cpl. Scott and began "yelling very loudly" [*Id.* at 3]. Sgt. Reheal told the other officers to shut the door, and he stated, "[I]f you don't take the ring off your finger[,] I am going to break your dam[n] finger and take it off" [*Id.* at 3, 12]. Plaintiff responded, "[R]eally[?]" [*Id.* at 3]. The officers then pushed Plaintiff against the wall, struck him in the back with their closed fists, and bent Plaintiff's finger backward trying to remove his ring [*Id.* at 3, 12]. When they were unsuccessful, they threw him to the floor and continued to beat him in the back as his wrists were being turned and his finger was being bent backwards [*Id.*]. Plaintiff "was screaming out very loudly" [*Id.*]. The ring was removed from Plaintiff's finger [*Id.* at 3]. There is nothing in TDOC policy requiring an inmate to remove his wedding band while in handcuffs [*Id.* at 2].

---

[1] Plaintiff also alleges that during a "N.W.C.X" search in 2020, officers "robbed several inmates for their jewelry" under the guise of a search [*Id*. at 2]. It is unclear whether Plaintiff told the officers about this event, or whether he is merely advising the Court that it occurred.

5

Plaintiff made several requests to see medical, but the officers refused and dragged him down a flight of iron stairs [*Id.*]. Plaintiff's legs and body were injured in the process [*Id.*]. Then Plaintiff, an elderly and vulnerable adult, was thrown into an empty shower [*Id.* at 3, 4, 10].

The NECX tactical team "immediately took [Plaintiff] off the floor where [he] was left for dead[,]" called an emergency code, and transported Plaintiff to the hospital [*Id.* at 3, 12]. Plaintiff received an x-ray and medical attention [*Id.*]. Plaintiff had received a broken finger and bruises and swelling to his body [*Id.* at 2, 11]. When Plaintiff told the tactical team what happened, they stated they were going back to the unit to find out why Plaintiff's ring was taken [*Id.* at 3]. "After several officers got[] involved[,] someone pitch[ed] the ring back into [Plaintiff's] room" [*Id.*].

Jason Phillips,[2] a nurse employed by Centurion, put into the computer that Plaintiff refused medical treatment and was not injured [*Id.*]. Nurse Phillips made this false report to allow the Disciplinary Board to sanction Plaintiff and "help out his friends who[] work[] at BCCX" [*Id.* at 17, 18]. But another nurse, Nurse Pierce saw Plaintiff and provided him with a copy of the medical incident report [*Id.* at 3]. After Plaintiff compared the documents from Nurse Phillips with those from Nurse Pierce, Plaintiff called Internal Affairs [*Id.*]. Nurse Phillips was fired [*Id.*].

---

[2] Plaintiff refers to this Defendant as "Jason Phillips" [Doc. 25, pp. 1, 17], "Jason Pipps" [*Id.* at 2], and "Jason Phipps" [*Id.* at 9, 10]. The Court will refer to this Defendant as "Jason Phillips" for consistency.

Plaintiff was given a disciplinary write up "in order to support the reason why [the officers] had to use excessive [] force" [*Id.*]. During the hearing, Disciplinary Board Chairperson Sgt. Blair and Board Member Sgt. McClure "tried very hard to sabotage the hearing by intentionally stop[p]ing the hearing and giv[ing] the officer[s] legal advi[c]e" [*Id.* at 8, 9, 10, 19]. Plaintiff was found guilty of refusing a direct order [*Id.* at 3]. Sgt. Blair denied Plaintiff his witnesses at the hearing (in violation of TDOC policy) and refused to allow him to cross-examine a witness [*Id.* at 19]. And Plaintiff's appeal was denied for failure to file a witness statement with the Disciplinary Board [*Id.* at 3]. Plaintiff states that "is false information because I have proof that the sgt did sign off on witness statement which during the appeal the sgt intentionally left out the witness statement so that the plaintiff could not appeal the statement for being denied his witness" [*Id.*]. This report "interfered with the Board of [P]arole[] decision" on September 3, 2025, and Plaintiff was denied parole [*Id.* at 3, 10].

Plaintiff was a participant in the IN2WORK Program and had finished the class at the time the alleged excessive force incident occurred [*Id.* at 19]. Plaintiff had a conversation with the "Food Steward" at NECX, Mr. Weitz, where he told Mr. Weitz that he intended to seek criminal charges against the BCCX Defendants [*Id.* at 3, 19]. Mr. Weitz told Plaintiff that "those were his friends[,]" and "since [he] ha[s] been having problems from staff and received a disciplinary from these officers[,] [Plaintiff] cannot attend the graduation for completing such program" [*Id.* at 3; *see also* p. 10].

Aggrieved, Plaintiff filed this § 1983 action [Doc. 2]. Liberally construed, Plaintiff's amended complaint raises claims of excessive force and denial of medical

7

treatment against Sgt. Reheal, CO Skiles, Cpl. Scott, and CO Brown; retaliation by Nurse Phillips; violations of due process by Sgt. Blair and Sgt. McClure; and retaliation by Mr. Weitz [*See, e.g., id.* at 10]. Plaintiff also claims that Defendants' conduct violated Tennessee laws related to attempted robbery, official misconduct, official oppression, and perjury [*Id.* at 17]. Defendants are sued in both their individual and official capacities, and Plaintiff seeks monetary damages as relief [*Id.* at 2, 11].

### C. Analysis

#### 1. Official-Capacity Claims

##### a. TDOC Defendants

Sgt. Reheal, CO Skiles, Cpl. Scott, CO Brown, Mr. Weitz, Sgt. Blair, and Sgt. McClure are all TDOC employees. Suit against TDOC employees in their official capacities is the equivalent of suit against TDOC itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). And because the TDOC is an arm of the State of Tennessee suit against a TDOC employee in his official capacity is suit against the State. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State"). However, Plaintiff cannot sustain a § 1983 action against the State of Tennessee, because "a state is not a person within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).

Also, the Eleventh Amendment typically "bars all suits, whether for injunctive,

8

declaratory or monetary relief, against the state and its departments." *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984)). Because there has not been congressional abrogation or waiver of immunity, Plaintiff's claims against these Defendants in their official capacities are otherwise barred by the Eleventh Amendment. *See, e.g., Quern v. Jordan*, 440 U.S. 332, 345 (1979) (finding § 1983 does not waive state sovereign immunity); *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (holding Tennessee has not waived immunity to suit under § 1983). Thus, Plaintiff's claims against CO Skiles, Sgt. Reheal, Cpl. Scott, CO Brown, Mr. Weitz, Sgt. Blair, and Sgt. McClure in their official capacities are impermissible and will be dismissed.

### b. Centurion Defendant

Nurse Phillips was ostensibly employed by Centurion at the time of these events [Doc. 25, p. 9].[3] But, as noted above, suit against a Centurion employee in his official capacity is the equivalent of suit against his employer. *See Kentucky*, 473 U.S. at 166. However, Centurion cannot be held liable under § 1983 merely because it employed someone who violated Plaintiff's constitutional rights. *See Monell*, 436 U.S. at 691 (noting § 1983 does not permit liability on a "*respondeat superior* theory"). Rather, to demonstrate that Centurion bears any liability in this action, Plaintiff must identify a policy or custom of the company and show that his particular injury was incurred due to the execution of that policy. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation

---

[3] Plaintiff maintains that Nurse Phillips "has recently been terminated by TDOC/Centurion Health Care Facility" [Doc. 25, p. 9].

9

and quotation marks omitted); *see also Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (holding plaintiff must allege "a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights). Here, Plaintiff has not forth any facts from which the Court could infer that his rights were violated by a policy or custom of Centurion, and, therefore, all official-capacity claims against Nurse Phillips will be dismissed.

### 2. Individual-Capacity Claims

To state a claim against a defendant in his personal capacity, a plaintiff must adequately plead that the particular defendant, through his or her own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). This requirement exists because constitutional liability cannot attach to a defendant solely based on his or her position of authority. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell*, 436 U.S. at 691 (finding that liability under § 1983 may not be imposed merely because a defendant "employs a tortfeasor").

#### a. Due Process

Liberally construed, Plaintiff alleges that Defendants violated his due process rights by (1) violating Tennessee law and TDOC policies; and (2) coaching officers, denying

Plaintiff the opportunity to present witnesses, denying Plaintiff the opportunity to cross-examine witness, and falsifying records at his disciplinary hearing.

To state a due process violation, Plaintiff must demonstrate that he was deprived of an interest protected by the Due Process Clause. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake.").

First, Plaintiff seeks to impose liability against Defendants based on his allegations that their conduct violated both state law and TDOC policy [*See, e.g.*, Doc. 25, pp. 2, 17]. However, claims under § 1983 can only be brought for "deprivations of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Thus, § 1983 does not provide redress for violations of state law or policy. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007) (holding failure to follow policy directive does not rise to level of a constitutional violation because policy directive does not create a constitutional right or protectable liberty interest); *see also Stanley v. Vining*, 602 F. 3d 767, 769 (6th Cir. 2010) ("It has long been established that the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983."). Accordingly, Plaintiff's claims that Defendants violated state law and/or failed to properly perform their duties under TDOC policy fails to state a claim upon which relief may be granted under § 1983, and these claims will be dismissed.

Next, Plaintiff complains of infirmities in his disciplinary hearing. But "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of

11

rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). And while greater due process protections apply when the state seeks to revoke an inmate's good-time credits, *see Wolff*, 418 U.S. at 563, Plaintiff does not state that any of his good-time credits were revoked as a result of his disciplinary conviction. Therefore, the Court will presume that Plaintiff did not lose any good-time credits upon his disciplinary conviction for refusing to remove his ring. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988) (providing that "when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist" (citation omitted)).

Moreover, a prisoner does not have a constitutional right to confront and cross-examine witnesses at a disciplinary hearing. *Wolff*, 418 U.S. at 567–69; *see also Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976). And any infirmities or falsification of Plaintiff's appeal documents likewise fails to raise a constitutional issue, as Plaintiff has no due process right to appellate review of a disciplinary conviction. *See Chance v. Compton*, 873 F. Supp. 82, 86 (W.D. Tenn. 1994) ("[A] right to appeal disciplinary convictions is not within the narrow set of due process rights enunciated by *Wolff*.").

Here, Plaintiff was afforded a disciplinary hearing where he was found guilty after officers testified that Plaintiff had refused a direct order. Due process does not require more for a determination of guilt. *See, e.g., Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 445, (1985) (holding procedural due process requires only "some evidence" to support findings made in disciplinary hearing). This is true even if the disciplinary charge is unfounded. *Person v. Campbell*, No. 98–5638, 1999 WL 454819, at

12

*1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983.").

Further, because Plaintiff seeks monetary damages related to his disciplinary conviction, he must first prove that his disciplinary conviction has been reversed or otherwise invalidated before pursuing his claim in a § 1983 action. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (holding plaintiff must demonstrate unlawfulness of his conviction or confinement prior to pursuing § 1983 claim challenging criminal judgment); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (applying *Heck* to disciplinary proceedings). Plaintiff has not demonstrated that his disciplinary conviction has been invalidated or overturned, and therefore, he cannot otherwise maintain a § 1983 suit against Defendants for monetary damages related to his disciplinary proceedings.

Accordingly, Plaintiff has failed to allege facts to support a colorable due process claim as it pertains to his disciplinary charge/proceedings, and these claims will be dismissed.

### b. Equal Protection

Plaintiff states that Sgt. Reheal's strip-search of Plaintiff involved "racial stuff" [Doc. 25, pp. 3, 12]. Specifically, he states that Sgt. Reheal dropped Plaintiff's clothes on purpose before ordering Plaintiff to pick them up, and that he forced Plaintiff to touch his genitals before ordering him to place his fingers in his mouth [*Id.*]. The Court considers whether this conduct violated Plaintiff's equal protection rights.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. For a

complaint to state a claim for violation of the Equal Protection Clause, it must allege that the plaintiff has been treated differently than other similarly situated individuals. *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (providing that, in order to state a viable equal protection claim, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis[,]'" and that the "threshold element of an equal protection claim is disparate treatment" (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006) and *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006))); *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (noting that the Equal Protection Clause "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike").

In his amended complaint, Plaintiff states that dozens of officers descended on the NECX to conduct a search for contraband, and that he was strip searched as part of that process [*See, generally*, Doc. 25]. Plaintiff does not state, nor does he set forth any facts from which the Court could infer, that he was treated differently from other similarly situated prisoners because of his race. Thus, complaint fails to state a colorable equal protection claim. *Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 379 (finding that a complaint failed to state an Equal Protection claim where it did not "make a plausible allegation that similarly situated organizations and individuals, of a different political viewpoint, have not been subject to the same alleged treatment by Defendants"); *Nali v. Ekman,* 355 F. App'x 909, 913 (6th Cir. 2009) (stating that a claim for race discrimination

14

Case 3:25-cv-00370-TAV-DCP    Document 28    Filed 11/24/25    Page 14 of 19
PageID #: 438

in prison discipline must be supported by allegations "that the people not disciplined were similarly situated and of a different race" to state an equal protection claim). Therefore, this claim will be dismissed.

### c. Eighth Amendment (Excessive Force/Medical Care)

Plaintiff maintains that Sgt. Reheal, CO Skiles, Cpl. Scott, and CO Brown used excessive force against him in removing his ring and dragging him down metal stairs, and that they subsequently denied him medical treatment [*See* Doc. 25, pp. 2, 3, 4, 10, 12]. These allegations implicate the Eighth Amendment, which provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.

In considering whether a use of force violates the Eighth Amendment's prohibition against cruel and unusual punishment, courts apply a two-part inquiry: (1) "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm," i.e., the subjective component; and (2) whether the conduct, in context, is sufficiently serious to offend "contemporary standards of decency," i.e., the objective component. *Hudson v. McMillan*, 503 U.S. 1, 6, 9 (1992).

Additionally, the Eighth Amendment prohibits deliberate indifference to a prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Such a claim is composed of an objective component requiring a plaintiff to show a "sufficiently serious" medical need and a subjective component requiring the plaintiff to show the defendant acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834,

15

842 (1994). Deliberate indifference may be established upon a showing that the "defendant acted with a mental state equivalent to criminal recklessness[,]" which "requires proof that [the] defendant subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it." *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (citations and internal quotation marks omitted).

At this stage of the litigation, the Court cannot find that Plaintiff's use-of-force or medical-care claims against Sgt. Reheal, CO Skiles, CO Brown, and/or Cpl. Scott are "frivolous or malicious[,]" or that they "fail[] to state a claim on which relief may be granted[.]" 28 U.S.C. § 1915(e)(2)(B). Therefore, Plaintiff's use-of-force and medical-care claims will proceed against Sgt. Reheal, CO Skiles, CO Brown, and Cpl. Scott in their individual capacities.

### d. Retaliation

Plaintiff maintains that Nurse Phillips and Mr. Weitz retaliated against him [Doc. 25, p. 10]. Specifically, he alleges that (1) Nurse Phillips made a false computer entry that Plaintiff refused medical care and was not injured after the use-of-force incident to "help out his friends" [Doc. 25, pp. 3, 17, 18]; and (2) Mr. Weitz refused to allow Plaintiff to attend the graduation program for IN2WORK because Plaintiff had received a disciplinary write up from officers who were Mr. Weitz's friends [*Id.* at 3, 10, 19].

A retaliation claim requires a plaintiff to show three things: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal

16

connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

First, as to Nurse Phillips' alleged falsification of Plaintiff's medical records, Plaintiff has failed to allege any facts that would support any element of a retaliation claim. That is, he has not alleged any facts that would permit the plausible inference that an adverse action was taken against him because he engaged in protected conduct. And "conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). Therefore, Plaintiff's retaliation claim against Nurse Phillips will be dismissed.

This brings the Court to Plaintiff's allegations against Mr. Weitz. Plaintiff maintains that upon learning that Plaintiff intended to file charges against the officers involved in the use-of-force incident, he told Plaintiff that those were his friends, and that Plaintiff could not participate in a graduation ceremony for a class he had completed [Doc. 25, pp. 3, 19]. Taking Plaintiff's allegations as true, which the Court must at this stage of the litigation, the Court does not find that Plaintiff's retaliation claim against Mr. Weitz is "frivolous or malicious" or that it "fails to state a claim on which relief may be granted[.]" 28 U.S.C. § 1915(e)(2)(B). Accordingly, Plaintiff's retaliation claim against Mr. Weitz in his individual capacity will proceed.

IV. **CONCLUSION**

Above, the Court:

1. **GRANTED** Plaintiff's motion to amend his complaint [Doc. 25];

2. **DENIED** as moot Plaintiff's motion to withdraw a Defendant in a previous amended complaint [Doc. 11];

3. **ORDERED** Plaintiff to refrain from filing his evidence in this case until he is ready to use it to support or oppose a dispositive motion; and

4. **DIRECTED** the Clerk to add CO Brown, Nurse Phillips, Mr. Weitz, Sgt. Blair, and Sgt/ McClure to the docket as Defendants.

Additionally, for the reasons set forth above:

1. Plaintiff's use-of-force and denial-of-medical care claims will **PROCEED** against Sgt. Tanner Sgt. Reheal, CO Brandon Skiles, CO Dillion Brown, and Cpl. Scott in their respective individual capacities;

2. Plaintiff's retaliation claim will **PROCEED** against Mr. Weitz in his individual capacity;

3. The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Sgt. Reheal, CO Skiles, CO Brown, Cpl. Scott, and Mr. Weitz;

4. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty-one (21) days of entry of this Order;

5. At that time, the summonses will be signed and sealed by the Clerk and returned to Plaintiff for service;

6. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against that Defendant;

7. All other claims and Defendants are hereby **DISMISSED**; and

8. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court

within fourteen (14) days of any change in address may result in the dismissal of this action.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>UNITED STATES DISTRICT JUDGE